IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


SABRINA STONE                                                    PLAINTIFF


v.                              CIVIL NO. 08-5140


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                   DEFENDANT


## MEMORANDUM OPINION

Plaintiff, Sabrina Stone, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.      Procedural Background:

Plaintiff protectively filed her current application for SSI on April 27, 2005, alleging an inability to work due to the combination of her chronic migraine headaches which causes nausea, dizziness and vision loss; her bipolar disorder; and her post traumatic stress disorder.[1] (Tr. 15, 91 581). An administrative hearing was held on June 18, 2007, at which plaintiff appeared with counsel and testified. (Tr. 575-611).

---

[1]Plaintiff filed previous applications for disability insurance benefits (DIB) and SSI on May 3, 2005. (Tr. 56-58, 61-66).

By written decision dated September 13, 2007, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 15). The ALJ determined plaintiff's severe impairments were as follows: migraine headaches, bipolar disorder, post traumatic stress disorder and a history of substance abuse. (Tr. 15). However, after reviewing all of the evidence presented, she determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 20). The ALJ found plaintiff retained the residual functional capacity (RFC) to perform work at the medium level of exertion. (Tr. 21). More specifically, the ALJ found plaintiff could occasionally lift and/or carry fifty pounds, twenty-five pounds frequently; to sit for six hours in an eight-hour workday; and to stand and/or walk for six hours in an eight-hour workday. The ALJ found plaintiff should work at a job that is non-complex in nature that involves simple instructions, little judgment and is learned by rote with few variables. The ALJ found plaintiff could work in an environment with superficial contact incidental to work with the public and co-workers and supervision should be concrete, direct and specific. With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a dishwasher and an industrial cleaner. (Tr. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which, after reviewing the additional evidence, denied that request on April 22, 2008. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 2). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 5,6).

**II.**   **Evidence Presented:**

-2-

At the administrative hearing before the ALJ on June 18, 2007, plaintiff testified that she was twenty-nine years of age and obtained an eighth grade formal education and a general equivalency diploma (GED). (Tr. 580). The record reflects plaintiff's work history consists of work as an industrial cleaner, a nursing assistant and a motel manager. (Tr. 587-588).

Prior to plaintiff's alleged onset date of April 27, 2005, plaintiff was treated for migraine headaches, temporomandibular joint pain, abdominal pain, hematochezia, diverticulosis, acute pyelonephritis, bronchitis, gastroenteritis, right shoulder and neck pain, back pain, a suicide attempt and a contusion of the left elbow (Tr. 253-370, 471).

The medical evidence during the relevant time period reflects the following. An Adult Diagnostic Assessment dated May 6, 2005, reports plaintiff was referred after attempting suicide in December of 2004. (Tr. 406). Treatment notes indicate plaintiff endorses six distinct personalities. Plaintiff's strengths were listed as cooking, sewing, verbal skills, being outdoors, organizing and loves to read. Plaintiff reported she smoked marijuana daily. Plaintiff was diagnosed with Axis I: bipolar mixed with severe psychotic features, dissociation identity disorder, generalized social phobia; and Axis II: post traumatic stress disorder and avoidant personality disorder. Plaintiff was given a global assessment of functioning (GAF) score of 38. It was recommended that plaintiff have a psychiatric evaluation and that plaintiff undergo therapy and medical management.

On May 28, 2005, plaintiff underwent an initial psychiatric evaluation. (Tr. 401-405). Plaintiff reported things had been really rough since her suicide attempt. Plaintiff reported she was at least five different people and that she argued with herself in her mind a lot. Plaintiff reported she smoked half of a package of cigarettes and three to four joints per day. After

-3-

evaluating plaintiff, the examiner diagnosed plaintiff with a mood disorder not otherwise specified and gave her a GAF score of 43.  The examiner noted plaintiff has a strong family history of bipolar disorder and that some of her symptoms were compatible with a major depression disorder with a strong irritability component.  Plaintiff was instructed to increase her Lamictal dosage and to return for a follow-up in five weeks.

On June 10, 2005, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a migraine associated with photophobia.  (Tr. 461-466).  Plaintiff's medications were listed as Lamictal and Seroquel. Plaintiff denied symptoms of a stiff neck or other significant neurologic symptoms.  Plaintiff reported the headache developed gradually over a period of hours and that she experienced nausea and three or four episodes of vomiting.  Upon examination, Dr. Shawn Bogle noted plaintiff was awake, alert and oriented.  Dr. Bogle noted plaintiff had no facial asymmetry, normal speech and muscle strength and tone was 2+/4.  Plaintiff's deep tendon reflexes were 2+/4.  Dr. Bogle noted a sensory exam was grossly intact.  Dr. Bogle found no reproducible trigger point of the cervical spine and base of the skull.  Plaintiff was diagnosed with a headache and given Nubain and Phenergan.  Plaintiff was to see her primary care physician in three to five days.

A psychiatric note dated June 27, 2005, reports plaintiff had noticed a "world of change" since increasing her Lamictal and Seroquel.  (Tr. 399-400).  Plaintiff reported her mood felt normal and without ups and downs.  Plaintiff reported her concentration was significantly improved and she had some improvement in energy level.  Plaintiff also reported a decrease in guilt and feeling worthless, thoughts of death, irritability and racing thoughts. Plaintiff reported

-4-

her personalities were coming out less and the voices had ceased. Plaintiff was to continue taking her medication and to follow-up in three weeks.

A psychiatric note dated July 20, 2005, reports plaintiff wonders if she may need an increase in her Lamictal dosage as she has been feeling a bit depressed. (Tr. 397-398). Plaintiff reported the Seroquel caused too much sedation. The examiner noted plaintiff was having some auditory hallucinations and psychosocial stressers. Plaintiff's Lamictal dosage was increased and Risperdal was added for the auditory hallucinations and mood stabilizer. Seroquel was discontinued. Plaintiff was to follow-up in five weeks.

On August 5, 2005, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a migraine. (Tr. 455-460). Plaintiff's medications consisted of Lamictal and Risperdal. Dr. Janet Shapter noted plaintiff's headache is a recurring problem and that plaintiff has had similar episodes. Dr. Shapter noted plaintiff's headache seemed to be localized to the frontal area. Plaintiff complained of nausea. Plaintiff was given Nubain and Phenergan and discharged home. Plaintiff was to follow up with her family doctor soon.

A psychiatric note dated August 10, 2005, reports plaintiff complains of being very irritable since being off Seroquel and starting Risperdal. (Tr. 395). Plaintiff denied hearing voices but noted some paranoid ideation but no delusions. Plaintiff also complained of a depressed mood. Plaintiff's Lamictal and Risperdal were increased. Plaintiff was to follow-up in four weeks.

On August 25, 2005, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a headache. (Tr. 451-454). Plaintiff's medications consisted of Lamictal, Risperdal and Albuterol. Plaintiff reported she had just changed medication and she

-5-

felt like a rod was sticking in the side of her head above her right ear.  Plaintiff reported a worsening of her headaches since her Risperdal was increased.  Plaintiff reported her doctor was going to take her off of Risperdal and start her on Abilify in one to two weeks.  Dr. Bogle diagnosed plaintiff with a headache and gave her a single dose of Demerol and Phenergan. Plaintiff was to see her primary care physician in one to two days.

A psychiatric review note dated August 30, 2005, reports plaintiff had a worsening of headaches with the increase in Risperdal. (Tr. 393-394).  The examiner noted it was unlikely that the headaches were caused by the increase in Lamictal as there we no headaches before Risperdal was started.  Plaintiff's mood was noted to be more stable with the increase in Risperdal. Plaintiff reported having uncomfortable dreams. Plaintiff reported mild dysphoria and some irritability.  Risperdal was stopped and plaintiff was to start Abilify when it arrived.

Individual therapy notes dated September 12, 2005, report plaintiff was being asked to move from her apartment because she could not pay rent.  (Tr. 392).  Plaintiff was to call if her condition worsened.

On September 22, 2005, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a migraine headache. (Tr. 247-252).  Plaintiff reported she also hurt her neck moving boxes.  Treatment notes indicate plaintiff was being treated for depression and bipolar symptoms. Plaintiff's medications consisted of Geodon and Lamictal.  Plaintiff reported she smoked but denied using alcohol or drugs. Plaintiff was diagnosed with a headache not otherwise specified and given a Toradol and Phenergan. Plaintiff was discharged home with instructions to rest and drink fluids.  Plaintiff was to take Aleve 2 twice daily as needed for pain.

-6-

Counseling notes dated September 27, 2005, report plaintiff made a little progress. Plaintiff reported she wanted to be able to get out and shop and see friend. (Tr. 391).

A psychiatric note dated September 27, 2005, reports plaintiff stop taking Geodon a week ago because it made her shake and possibly caused nightmares. (Tr. 389-390). Plaintiff reported she had not been feeling depressed but had been fighting with her alter personalities. She reported feeling hyper at times but generally feeling pretty mellow. Plaintiff was to continue with Lamictal and start Abilify as it had arrived.

On October 13, 2005, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a migraine. (Tr. 239-246). Plaintiff reported she smoked half of a package of cigarettes a day but denied use of alcohol or drugs. (Tr. 241). Plaintiff's medications consisted of Lamictal and Abilify. Plaintiff reported it was the worse headache she had ever had. Plaintiff reported she had to seek treatment in the emergency room because she had no money or insurance to see a doctor. A CT scan of the brain was normal. Dr. Johnny Smith noted plaintiff's symptom complex was consistent with an atypical migraine. Plaintiff was given Nubain and Phenergan. Plaintiff was discharged home with instructions to rest and drink fluids.

Counseling notes dated October 17, 2005, indicate plaintiff was "more manic than depressed." (Tr. 388). Plaintiff reported she was staying busy picking up walnuts and walking at home. The counselor noted plaintiff was doing much better with the adjustment of her medication.

A psychiatric note dated October 17, 2005, reports plaintiff is doing much better since starting Abilify. (Tr. 382, 386-387). Plaintiff denied depression and reported significantly

-7-

decreased irritability and greatly improved sleep. Plaintiff complained of increased "fidgetiness" and some slurred speech and stuttering since starting Abilify. The examiner did not notice any speech problems. Plaintiff complained of some odd dreams but they were less of a problem than before. Plaintiff reported that her personalities had not been acting out since she started Abilify. Plaintiff was started on a medication to treat her akathesia and was continued on her Lamictal and Abilify. Plaintiff was to follow-up in three weeks.

On October 19, 2005, Dr. Jay Rankin, a non-examining medical consultant, completed a Psychological Review Technique Form (PRTF), indicating that plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; and no repeated episodes of decompensation, each of extended duration. (Tr. 418-431). After reviewing the medical evidence of record, this assessment was affirmed in January and February of 2006. (Tr. 414-417).

Dr. Rankin also completed a mental RFC assessment stating that plaintiff has moderate limitations in the following areas: in her ability to understand and remember detailed instructions; in her ability to carry out detailed instructions; in her ability to maintain attention and concentration for extended periods; in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; in her ability to work in coordination with or proximity to others without being distracted by them; in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in her ability to interact appropriately with the general public; in her ability to accept

instructions and respond appropriately to criticism from supervisors; in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; in her ability to travel in unfamiliar places or use public transportation; and in her ability to set realistic goals or make plans independently of others. (Tr. 371-374). Dr. Rankin opined that plaintiff is "able to perform work where interpersonal contact is incidental to work performed, e.g., assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete." (Tr. 373).

Counseling notes dated November 8, 2005, report plaintiff discussed her personalities and the problems they were having. (Tr. 385). Plaintiff reported she had had two migraines in the past month that caused her to seek treatment in the emergency room.

A psychiatric note dated November 8, 2005, reports plaintiff's complaints that she has been struggling with her alters. (Tr. 384). Plaintiff reported the Abilify was working for her and that her "fidgety" movements had ceased. Plaintiff reported she was not depressed or having mood swings. Plaintiff was to continue to take Lamictal and Abilify. (Tr. 383).

On December 23, 2005, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a headache since the previous evening. (Tr. 447-450). Plaintiff was diagnosed with a migraine headache and received two Nubain injections.

On December 30, 2005, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining nausea, vomiting and flu symptoms. (Tr. 443-446). Plaintiff also reported she was starting to get a migraine. Plaintiff was diagnosed with gastroenteritis.

AO72A
(Rev. 8/82)

Plaintiff was given a single does of Demerol and prescribed Phenergan. Plaintiff was to follow up with her primary care physician in three to five days.

A psychiatric note dated January 3, 2006, reports plaintiff had been doing "pretty good" but she reported the holidays had been stressful. (Tr. 380-381). The examiner noted plaintiff had gotten off of her regular schedule with medication and that she became more agitated more easily. Plaintiff reported she had not been feeling depressed or experiencing mood swings. Plaintiff denied paranoia or having any problems with her alter personalities. The examiner noted plaintiff was going to have to temporarily halve her Abilify because she waited too long to reapply for partial assistance. Plaintiff was also informed that she would be seeing a new doctor because the examiner was leaving OCS.

Plaintiff underwent a x-ray of her lumbar spine on January 12, 2006, that revealed a normal lumbar spine. (Tr. 468).

On January 23, 2006, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a migraine. (Tr. 439-442). Plaintiff's medications consisted of Relpax, Aciphex, Topamax, Lamictal and Abilify. Treatment notes indicate this was a typical migraine headache presentation for plaintiff. Dr. Barbara Ashe diagnosed plaintiff with migraine headache and plaintiff was given a single dose of Nubain and Phenergan. Plaintiff was treated for a migraine headache again on February 2, 2006. (Tr. 435-438).

Progress notes from the Medical Clinic Mission dated February 14, 2006, reveal plaintiff wanted x-ray results and a medication refill. (Tr. 470). Plaintiff was diagnosed with a migraine and cervical neck pain.

-10-

A psychiatric progress note dated March 10, 2006, indicates plaintiff's primary care physician prescribed Wellbutrin for smoking cessation and Topamax for migraine prophilaxis. (Tr. 512). Plaintiff reported she was doing very well. Plaintiff denied paranoid thinking or mood swings. Dr. Dante Durand noted plaintiff was living alone because her boyfriend went to truck driving school. Plaintiff was to continue with her current treatment plan and to return in three months. (Tr. 513). Plaintiff was discharged from Ozark Counseling Services on January 4, 2007, after failing to return for treatment. (Tr. 510-511).

The record reflects plaintiff sought emergency room treatment for migraine headaches and associated problems on April 10, 2006, May 14, 2006, May 17, 2006, May 19, 2006, June 9, 2006, July 28, 2006, and August 15, 2006. (Tr. 473-480, 486-508).

On May 23, 2006, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of an injury to her posterior neck and cervical spine and an onset of a headache. (Tr. 490-493). Plaintiff reported she strained the upper portion of her shoulder lifting a laundry basket off the floor. Plaintiff was diagnosed with pain involving the posterior right shoulder and scapula.

Progress notes from the Medical Clinic Mission dated May 23, 2006, report plaintiff's complaints of chest congestion, a cough, nausea, stomach pain and a migraine. (Tr. 469). Plaintiff was diagnosed with a migraine and bronchitis and prescribed medication.

On July 13, 2006, plaintiff entered the North Arkansas Regional Medical Center emergency room reporting she had fallen down five stairs the previous night. (Tr. 481-485). Plaintiff reported experiencing pain in her low back and left hip. Plaintiff was not taking any

-11-

medication. X-rays of plaintiff's lumbar spine and hip revealed no abnormalities. (Tr. 484-485). Plaintiff was diagnosed with a contusion status post fall and prescribed Vicodin for pain.

On February 5, 2007, plaintiff entered the Cox Medical Centers emergency room with complaints of a migraine for the past two days with nausea and photophobia. (Tr. 515-523, 532-533). A CT scan of plaintiff's head was normal. (Tr. 524-524). Treatment notes state with medication plaintiff's headache was almost gone. Plaintiff was diagnosed with an acute headache.

On April 10, 2007, plaintiff was seen at Ozark Guidance, Inc, for a diagnostic interview. (Tr. 553-559). Plaintiff reported she was not doing well as a three year relationship had ended, there was a death and a "whole bunch of other things." Plaintiff reported she had been on the road with her boyfriend for seven months as he is a truck driver. Plaintiff reported having both highs and lows. Plaintiff denied current suicidal or homicidal ideation but said every two or three days she has ideas of death and dying with no method. Plaintiff reported having flashbacks daily and nightmares of past sexual and physical abuse. Plaintiff reported having heard voices off and on her whole life with the most recent occurrence being at a funeral the previous month. Plaintiff reported a history of having personality alters that she has named. Plaintiff reported she had sought treatment in the past at Ozark Counseling Services. Plaintiff reported she had not sought treatment since 2006 and that she stopped taking the prescribed medication because she felt over-medicated. Plaintiff reported she smokes pot daily if available and has no intention of quitting. Plaintiff reported her medical problems were migraine pain and chronic body pain. Plaintiff was given a primary diagnosis of bipolar disorder, posttraumatic stress disorder, dissociative disorder and amphetamine abuse. Plaintiff was given a GAF of 40. Mr. Troy A.

-12-

Gray, LCSW, recommended plaintiff undergo a psychiatric evaluation.  On April 11, 2007, Dr. Edwin C. Jones agreed to the treatment plan.  (Tr. 548-552).

On April 16, 2007, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a migraine for the past two to three days.  (Tr. 535-544). Plaintiff also complained of nausea with three to four episodes of vomiting.  Plaintiff denied fatigue, shortness of breath, chest pain, back pain, neck pain, upper extremity pain, lower extremity pain, loss of strength or difficulty walking.  Upon examination, Dr. Ralph Maxwell noted plaintiff was alert, oriented to person, place and time and was without motor or sensory deficit.  Plaintiff exhibited no extremity tenderness or edema and had full range of motion in all extremities. Plaintiff's mood and affect were normal.  Plaintiff was given injections.  Plaintiff was discharged home in improved condition.

On April 19, 2007, Mr. Gray noted plaintiff reported having racing thoughts and rapid speech.  (Tr. 546).  Plaintiff reported she had not been sleeping well and had been having headaches.  Plaintiff reported her thoughts were going faster than her body.  Mr. Gray discussed with plaintiff that she would need to go to a free clinic to get back on her medication until she could be seen by a psychiatrist.  Plaintiff agreed to do this.  Plaintiff reported feeling better by the end of the session.

On May 9, 2007, plaintiff entered the St. John's Hospital Berryville emergency room complaining of shoulder and neck pain after slipping and falling on her shoulder.  (Tr. 561-566). A cervical spine x-ray revealed loss of the normal curvature, minimal degenerative change and no acute changes.  (Tr. 566).  Plaintiff was discharged with a prescription for Vicodin and Keflex.

-13-

On May 22, 2007, plaintiff entered the North Arkansas Regional Medical Center emergency room complaining of a migraine. (Tr. 568-571). Plaintiff also reported her face was drooping and she was starting to drool. Plaintiff's medication was listed as Orphenadrine. Upon examination, Dr. Allen Jackson noted plaintiff was awake, alert and oriented. Plaintiff exhibited no facial asymmetry and had normal speech. Plaintiff's muscle strength and tone were 2+/4 as were her deep tendon reflexes. Dr. Jackson noted no reproducible trigger point of the cervical spine or base of the skull. Plaintiff was diagnosed with a headache.

III.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one

-14-

year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

A.   **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  *See* 20 C.F.R. § 416.920.  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § 416.920.

IV.   **Discussion:**

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled since April 27, 2005, her alleged onset date through the date of the ALJ's decision.  Defendant

-15-

contends the record supports the ALJ determination that plaintiff was not disabled through the date of the ALJ decision.

### A.      Alcoholism or Substance Abuse:

Plaintiff argues that the ALJ failed to analyze plaintiff's past and present drug use in accordance with 20 C.F.R. § 416.935.   Defendant submits this argument is without merit. We agree.

Prior to doing the analysis of whether or not alcoholism or drug abuse is a contributing factor to the determination that a claimant is disabled, the ALJ must determine the claimant to be disabled. 20 C.F.R. § 416.935; *Brueggemann v. Barnhart,* 348 F.3d 689, 694 (8th Cir. 2003). In this case, the ALJ found plaintiff not disabled irrespective of her continuing drug abuse.  As such, the ALJ was not required to do the contributing factor analysis.

### B.      Subjective Complaints and Credibility Analysis:

In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992).  This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.*  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).   We believe the ALJ

-16-

adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

A review of the medical evidence reveals plaintiff has sought treatment for migraine headaches during the relevant time period mainly through emergency room services. It appears when plaintiff was taking medication as prescribed, plaintiff's migraine headaches appeared to be managed. In March of 2006, psychiatric progress notes, plaintiff reported she had been prescribed Topamax for migraine prophylaxis. At that time, plaintiff reported she was doing very well. In reviewing the medical evidence, the record shows plaintiff underwent several CT scans of the brain which were normal. The ALJ also noted that plaintiff reported to medical professionals and testified at the administrative hearing that she rode along with her then boyfriend, who was a truck driver, from roughly the end of August 2006 through the first part of March 2007. (Tr. 553, 604-605). With the exception of seeking treatment for a headache in February of 2007, during that almost seven month period of time plaintiff did not seek medical treatment, for her alleged disabling headaches or any other impairments. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir.1997) (failure to seek medical assistance contradicts subjective complaints). Based on the record as a whole we find substantial evidence to support the ALJ's determination that plaintiff did not have disabling migraines.

The ALJ also discussed plaintiff's bi-polar disorder, depression and post traumatic stress disorder. In doing so, the ALJ noted that once plaintiff's medication had been adjusted she reported a decrease in irritability and mood swings, an increase in sleep and she denied depression. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th cir. 1999) (impairments amenable to

-17-

treatment not disabling).   The ALJ also noted that while plaintiff was diagnosed with a GAF

score of 38 during the relevant time period when she was not taking her medication, when

plaintiff was compliant with her medication her GAF score was noted as a 68.[2]  In April of 2007,

plaintiff agreed to go to a free clinic to get her prescription medication until she could see a

psychiatrist but the record fails to show plaintiff went to the clinic or was denied treatment.  The

record clearly shows plaintiff has mental impairments; however, based on the entire evidence of

record we find substantial evidence supporting the ALJ's determination that plaintiff's mental

impairments are not disabling.

Plaintiff did seek treatment for neck and shoulder pain during the relevant time period.

However, it appears this pain resolved and did not appear to restrict plaintiff for performing

activities of daily living.  It is noteworthy that plaintiff continued to exhibit full range of motion

in her spine and extremities throughout the relevant time period.  Furthermore, in April of 2007,

plaintiff denied fatigue, shortness of breath, chest pain, back pain, neck pain, upper extremity

pain, lower extremity pain, loss of strength or difficulty walking.

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily

activities.  In a Function Report dated May 31, 2005, plaintiff reported she was able to take care

of her personal needs, take care of her fish including cleaning the fish tank, prepare meals, clean

the house, do laundry and shop for groceries.  (Tr. 141- 148).  Plaintiff listed her hobbies as

---

[2]According to the Diagnostic and Statistical Manual of Mental Disorders, a GAF of thirty-eight indicates "some
impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major
impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed
man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at
home and is failing in school)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed.
2000).  Further, a GAF score of sixty-eight indicates "some mild symptoms (e.g. depressed mood and mild insomnia)
or some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the
household), but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

reading, sewing and watching television and indicated she did these activities "daily very well." Plaintiff reported she went to see family and friends weekly.  The record reflects plaintiff also went on the road with her boyfriend, a truck driver, in late August of 2006, through March of 2007, when they separated.  Plaintiff testified she was on the road with him from weeks to months at a time.  Plaintiff also reported her boyfriend had paid her fifty dollars a week plus supporting her to do his paperwork, with the exception of his log book.  (Tr. 603). *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

Therefore, although it is clear that plaintiff has some limitations, she has not established that she is unable to engage in any gainful activity.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

### C.   RFC Assessment:

We next turn to the ALJ's assessment of plaintiff's RFC.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant

-19-

evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id*.

In the present case, the ALJ found plaintiff maintained a RFC to perform medium work with the non-exertional limitations as addressed above. In making this determination, the ALJ considered the medical assessments of non-examining agency medical consultants, plaintiff's subjective complaints, and her medical records. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's treating and examining physicians placed no restrictions on her activities that would preclude performing the RFC determined. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on the entire evidence of record, we find substantial evidence to support the ALJ's RFC determination.

### D.  Hypothetical Proposed to Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ posed to the vocational expert fully set forth the

-20-

impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude her from performing work as a dishwasher and an industrial cleaner. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

> **E.     Fully and Fairly Develop the Record:**

While an ALJ is required to develop the record fully and fairly even when a claimant has an attorney, *See Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision), we find the record before the ALJ contained the evidence required to make a full and informed decision regarding plaintiff's capabilities during the relevant time period. *See Strongson v. Barnhart,* 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

**V.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 31st day of August 2009.

-21-

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

-22-